```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| TORRO C.,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case # 1:20-cv-1296-DB<br><br>MEMORANDUM<br>DECISION AND ORDER |

## INTRODUCTION

Plaintiff Torro C. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 15. Plaintiff also filed a reply brief. *See* ECF No. 16. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on September 11, 2017, alleging disability beginning February 13, 2014 (the disability onset date),[1] due to cervical and lumbar spine pain and

---

[1] The Court notes that Plaintiff had a prior SSI claim filed on March 30, 2015 and denied on July 22, 2015. Tr. 69. Plaintiff's present claim alleges an onset date of February 13, 2014, which overlaps with the prior claim. The ALJ explained that any reference to evidence during the period of Plaintiff's prior claim is not a constructive reopening but used to evaluate the present claim. *Id*.

nerve damage. Transcript ("Tr.") 17, 143. Plaintiff's claim was denied initially on January 10, 2018, after which she requested an administrative hearing. Tr. 17, 80-83. On October 21, 2019, Administrative Law Judge Stephan Bell (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 17. Although informed of her right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. Tr. 17, 129. Dawn Blythe, an impartial vocational expert ("VE"), also appeared and testified by telephone. Tr. 17.

The ALJ issued an unfavorable decision on December 12, 2019, finding that Plaintiff was not disabled. Tr. 17-27. On July 22, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-3. The ALJ's December 12, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

2

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 12, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since September 11, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[2] except she can frequently reach overhead and in all directions to the left, and to the right. The claimant can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, balance frequently, stoop frequently, kneel frequently, crouch frequently, crawl occasionally. The claimant can never work at unprotected heights, never around moving mechanical parts, and never operate a motor vehicle. She can never work in vibration.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on March 18, 1971 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 11, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 17-26.

---

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on September 11, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

## **ANALYSIS**

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ improperly evaluated the opinion of consultative examiner Samuel Balderman, M.D. ("Dr. Balderman"), and as a result, the ALJ's RFC finding was not supported by substantial evidence. *See* ECF No. 13-1 at 1, 28-35.

The Commissioner argues in response that the ALJ's finding that Plaintiff can perform a range of sedentary work was properly based on the medical opinion evidence and other objective evidence of record, including the medical examination findings and Plaintiff's improvement with conservative treatment. *See* ECF No. 15-1 at 6-14. Accordingly, argues the Commissioner, the ALJ's RFC finding was supported by substantial evidence. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that the ALJ adequately considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, and the ALJ's RFC determination was supported by substantial evidence.

The record shows that in 2014 Plaintiff reported she was in a motor vehicle accident and had continued to experience neck and lumbar spine pain thereafter. Tr. 264, 546, 819. In September 2014, she reported she was experiencing back pain one time per week. Tr. 836. An MRI from

February 2016 demonstrated reversal of cervical lordosis; C4-5 posterocentral protrusion type herniation compressing on the thecal sac and ventral cord; and C5-6 disc bulge compressing the thecal sac and ventral cord. Tr. 261. An MRI of the lumbar spine from 2016 showed grade I retrolisthesis at L4-5 and L5-S1; left paracentral posterior disk herniation and associated radial tear at L4-5; disk bulging at L5-S1; spinal stenosis at L4-5; and neural encroachment at L4-5 and L5-S1. Tr. 269.

On February 9, 2016, Plaintiff saw Jo J. Reeves, D.C. ("Dr. Reeves") for an independent medical evaluation. Tr. 264. She reported she had been in an accident in February 2014 where her parked car was hit and "upon impact, her head slapped back and forth very hard." *Id*. Dr. Reeves opined that Plaintiff could not lift over 10 pounds, no repetitive bending, twisting, no prolonged standing or sitting, and ability to change positions as frequently as needed, no arms overhead, no repetitive pushing or pulling. Tr. 267. Thereafter, Plaintiff underwent chiropractic treatment with W. Scott Pancake, D.C. ("Dr. Pancake"), although the majority of this medical evidence in the record, predates the application date of September 11, 2017. Tr. 440-61, 464-503.

On November 20, 2017, Plaintiff had an internal medicine consultative examination with Dr. Balderman. Tr. 535-38. She reported constant spine pain with only partial relief from medications. Tr. 535. On examination, Dr. Balderman noted that Plaintiff appeared to be in no acute distress; she had a normal gait and stance; she used no assistive devices; she could walk on heels and toes without difficulty but made no effort to squat; she needed no help changing for the examination or getting on and off the exam table; and she rose from the chair without difficulty. Tr. 536. Plaintiff had full (5/5) strength in her upper and lower extremities with normal sensation and reflexes. Tr. 537. She had decreased range of motion in her neck and lower back, but Dr. Balderman observed that Plaintiff gave "incomplete" effort. *Id*. He opined that Plaintiff had mild

6

limitations in changes of the head and mild limitation in bending and lifting with symptom magnification. *Id*.

As noted above, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

7

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1527, 416.927. Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March

27, 2017). Here, Plaintiff filed her claim on September 11, 2017, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the new regulations also alter the way the ALJ discusses medicalopinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

In light of these new regulatory changes, Plaintiff's reliance on case law that reflects the old "treating physician rule" is misplaced. *See, e.g.*, ECF No. 13-1 at 28-31. The new regulations supersede any precedent under the "treating physician rule" and instead instruct that the ALJ cannot defer to medical opinions, regardless of the source, but instead will assess whether a

10

medical opinion is persuasive (or not), focusing on the most important factors of supportability and consistency. 20 C.F.R. § 416.920c. In this case, the ALJ properly followed the regulatory framework in his consideration of Dr. Balderman's opinion, and substantial evidence supports the ALJ's RFC assessment. Tr. 22-25.

After reviewing Dr. Balderman's opinion in light of the entire record, the ALJ explained that he found this opinion partially persuasive. Tr. 24-25. The ALJ explained that Dr. Balderman's generally unremarkable findings were supported by and consistent with other examination findings during the period of alleged disability showing that Plaintiff had some pain in her back and neck with limited range of motion at times, but at other times she displayed full range of motion, and she consistently had full (5/5) strength; a normal gait and stance; and intact reflexes and sensation. Tr. 24-25, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04. Accordingly, the ALJ limited Plaintiff to sedentary work with only frequent reaching and a range of additional postural limitations, which is consistent with Dr. Balderman's opinion that Plaintiff had "mild" limitations in bending, lifting, or moving her head. Tr. 20-25, 535-37.  Furthermore, the ALJ's sedentary RFC provides greater limitations than Dr. Balderman's "mild" findings. *See id*. The ALJ also reasonably explained that Dr. Balderman's opinions were vague in terms of functional limitations, which is why the ALJ found them only partially persuasive. Tr. 24-25.

Although Plaintiff claims that the ALJ did not adequately account for Dr. Balderman's assessment of a "mild" limitation moving her neck, the ALJ explained why the record did not support greater limitations than those assessed in the RFC. Tr. 22-25. Notably, the ALJ specifically considered the same evidence in the record that Plaintiff highlights, including her 2016 MRI showing a disc bulge and herniation, and grade I retrolisthesis. Tr. 22, 260-61, 268-69. The ALJ also discussed in great detail the examination findings of chiropractor Dr. Pancake showing that Plaintiff had decreased sensation, neck and back pain, and decreased range of motion. Tr. 22, 440-

11

61, 464-503. However, the ALJ also explained that many of these findings of pain and decreased range of motion pre-dated the September 11, 2017 period of alleged disability. Tr. 22.

Moreover, the ALJ's discussion of the evidence shows that Plaintiff's symptoms improved during the period of alleged disability with conservative treatment. Tr. 22-25. For example, the ALJ explained that during the period of alleged disability, Plaintiff showed increased range of motion, decreased pain, and improvements on a cervical spine MRI following her conservative treatment, which included chiropractic care, injections, and medication. Tr. 22-25, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04. The ALJ also noted that following an August 2019 MRI of Plaintiff's cervical spine, Dacia Harris, M.D. ("Dr. Harris"), explained that the MRI demonstrated some structural abnormalities but there were no severe nerve compressive changes; no spinal cord compression; no abnormal signal in the spinal cord; and no indication that Plaintiff needed a cervical spine surgery. Tr. 23, 904.

The ALJ also noted that in January 2019, Plaintiff reported "0% improvement" during an examination with Dr. Pancake, but Dr. Pancake disagreed and noted that Plaintiff demonstrated improvement on range of motion testing in her cervical, thoracic, and lumbar spines, and decreased pain on palpation. Tr. 23, 771. The ALJ also explained that during the period of alleged disability, Plaintiff generally reported that her pain was only three to six out of 10, and she had improvement with medication. Tr. 23-24, 679, 682, 685, 688, 690, 696, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04. Considering the record, the ALJ explained that to account for Plaintiff's neck and back pain, he limited her to a reduced range of sedentary work, including lifting no more than 10 pounds, only frequent reaching, and multiple additional postural limitations. Tr. 22-25. Thus, substantial evidence, including Plaintiff's improved range of motion and decreased pain with conservative treatment, supports the ALJ's finding, which is also consistent with Dr. Balderman's "mild" limitations. Tr. 22-25, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04.

The ALJ also noted the inconsistency of Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms and limitations with the objective evidence in the record. Further, noted the ALJ, Plaintiff reported a significant range of daily activities, including frequent travel to and from Florida for treatment, and to care for family members, as well as travel to and from Washington, D.C. to care for her father. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

Plaintiff also argues that the ALJ should have afforded greater sitting limitations consistent with the 2016 opinion of Dr. Pancake, implying that the ALJ used his own lay opinion in finding that Plaintiff could sit for six hours in an eight-hour workday. *See* ECF No. 13-1 at 29-35. For the reasons explained below, Plaintiff's argument lacks merit.

First, the ALJ's finding that Plaintiff could sit for six hours per day is consistent with the finding of state agency physician J. Lawrence, M.D. ("Dr. Lawrence"), who opined that Plaintiff could perform a range of medium work, which includes the ability to sit for up to six hours in an eight-hour workday. Tr. 24, 75-77. Despite this, the ALJ assessed greater standing, walking, lifting, pushing, and pulling restrictions than Dr. Lawrence, limiting Plaintiff to only sedentary work based on her reported neck and back pain. Tr. 20-25.

Furthermore, as the ALJ's evaluation of the evidence shows, Dr. Pancake's 2016 opinion pre-dated the period of alleged disability, and Plaintiff improved with conservative treatment after Dr. Pancake issued his 2016 opinion. Tr. 22-25, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04. As discussed above, the ALJ explained that Dr. Pancake's treatment records during the period of alleged disability show that with conservative treatment, Plaintiff displayed increased range of motion and decreased tenderness on examinations. Tr. 22-25, 771.

The ALJ also pointed to evidence throughout the record showing that Plaintiff had full range of motion on other examinations with full (5/5) strength in her upper extremities and no reports of back pain. Tr. 22-25, 771, 856, 862-63, 865-66, 871-75, 878, 880, 893-98, 903-04. Thus, the ALJ reasonably explained throughout his discussion of the evidence why he found Dr. Pancake's 2016 opinion unpersuasive, as it was not supported by or consistent with the longitudinal record. Tr. 25. *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'") (quoting *Veino*, 312 F.3d at 588).

Based on the foregoing, the ALJ properly analyzed the medical opinion evidence in accordance with the Commissioner's regulations and properly assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force"). Although Plaintiff may identify other evidence in the record that she feels supports her position, this does not detract from the substantial evidence supporting the ALJ's findings. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (substantial evidence is so deferential "that

14

there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence").

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, as well as Plaintiff's significant range of activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE